# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
No. 13-736V
Filed: October 23, 2015
For Publication

```
*************************************
BENA TOMLINSON,                    *
                                   *
         Petitioner,               *      Attorneys' fees and costs decision;
                                   *      reasonable hourly rate; overstaffing
v.                                 *
                                   *
SECRETARY OF HEALTH                *
AND HUMAN SERVICES,                *
                                   *
         Respondent.               *
                                   *
*************************************
```

Ronald C. Homer, Boston, MA, for petitioner.
Michael P. Milmoe, Washington, DC, for respondent.

**MILLMAN, Special Master**

### DECISION AWARDING ATTORNEYS' FEES AND COSTS[1]

On February 13, 2015, the undersigned issued a damages decision in this case pursuant to the parties' stipulation, awarding petitioner $170,000 in compensation. On July 15, 2015, petitioner filed an application for attorneys' fees and costs, requesting $23,740.70. Petitioner filed a supplemental application for attorneys' fees and costs on August 11, 2015, requesting an additional $1,440.50. On October 16, 2015, petitioner filed an amended motion for attorneys' fees and costs, adjusting the amount she asks for in attorneys' fees to $21,472.70. Petitioner thus seeks a total of $24,828.70 for attorneys' fees and costs. Respondent has raised objections to certain aspects of petitioner's fee applications.

For the reasons set forth below, the undersigned awards petitioner **$24,097.50** in

---

[1] Vaccine Rule 18(b) states that all decisions of the special masters will be made available to the public unless they contain trade secrets or commercial or financial information that is privileged and confidential, or medical or similar information whose disclosure would constitute a clearly unwarranted invasion of privacy. When such a decision is filed, petitioners have 14 days to identify and move to redact such information prior to the document's disclosure. If the special master, upon review, agrees that the identified material fits within the banned categories listed above, the special master shall redact such material from public access.

reimbursement for fees and costs.

## PROCEDURAL HISTORY

On September 25, 2013, petitioner filed a petition under the National Childhood Vaccine Injury Act, 42 U.S.C. §§ 300aa-10–34 (2012) ("Vaccine Act"), alleging that she suffered an injection-related shoulder injury as a result of the influenza ("flu") vaccination she received on October 6, 2010. Pet. at 1. On February 10, 2014, respondent filed her Rule 4(c) Report conceding that petitioner suffered from a shoulder injury related to vaccine administration ("SIRVA") in her left shoulder. Respondent filed a proffer on award of compensation on February 13, 2015, and the undersigned issued a decision pursuant to that proffer, awarding petitioner $170,000 in damages.

On July 15, 2015, petitioner filed an application for attorneys' fees and costs, requesting $20,385.70 in attorneys' fees, $3,005.00 in attorneys' costs, and $300.00 in petitioner's costs. Respondent filed an opposition to petitioner's fee application on August 3, 2015, objecting on the grounds that the attorneys' and paralegals' hourly rates were not reasonable, portions of the time expended were duplicative, excessive, and/or unreasonable, and the costs for preparing a life care plan were unreasonable. Petitioner filed a reply to respondent's opposition on August 11, 2015, arguing that none of the fees or costs requested are excessive. Petitioner also filed a supplemental application for attorneys' fees, requesting $1,440.50 in reimbursement for fees incurred for reviewing respondent's opposition and drafting and filing the reply.

On October 16, 2015, petitioner filed an amended motion for attorneys' fees and costs, adjusting the amount she asks for in light of Special Master Gowen's decision on the appropriate hourly rate for petitioner's counsel in another case. See McCulloch v. Sec'y of HHS, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). Petitioner now asks for $24,828.70 in attorneys' fees and costs. On October 19, 2015, respondent's counsel informed the undersigned's law clerk that respondent does not plan on responding to petitioner's amended motion.

This matter is now ripe for adjudication.

## DISCUSSION

### I.      Entitlement to Fees and Costs Under the Vaccine Act

Under the Vaccine Act, a special master or a judge on the U.S. Court of Federal Claims shall award reasonable attorneys' fees and costs for any petition that results in an award of compensation. 42 U.S.C. § 300aa-15(e)(1); Sebelius v. Cloer, 133 S. Ct. 1886, 1893 (2013). Petitioner was awarded compensation pursuant to a proffer, and therefore petitioner is entitled to an award of reasonable attorneys' fees and costs in this case.

### II.      Reasonableness of Requested Attorneys' Fees and Costs

The Federal Circuit has approved the lodestar approach to determine reasonable attorneys' fees and costs under the Vaccine Act, which involves a two-step process. Avera v. Sec'y of HHS, 515 F.3d 1343, 1347 (Fed. Cir. 2008). First, a court determines an "initial estimate . . . by 'multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate.'" Id. at 1347–48 (quoting Blum v. Stenson, 465 U.S. 886, 888 (1984)). Second, the court may make an upward or downward departure from the initial calculation of the fee award based on specific findings. Id. at 1348.

Petitioner requests reimbursement for fees and costs incurred by the law firm of Conway, Homer & Chin-Caplan, P.C. ("CHCC") of Boston, Massachusetts, as well as costs she incurred herself.

### A.   Reasonable Attorneys' Fees

Counsel must submit fee requests that include contemporaneous and specific billing entries indicating the task performed, the number of hours expended on the task, and who performed the task. See Savin v. Sec'y of HHS, 85 Fed. Cl. 313, 316–18 (Fed. Cl. 2008). Counsel must not include in their fee requests hours that are "excessive, redundant, or otherwise unnecessary." Saxton v. Sec'y of HHS, 3 F.3d 1517, 1521 (Fed. Cir. 1993) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434 (1983)). It is "well within the special master's discretion to reduce the hours to a number that, in [her] experience and judgment, [is] reasonable for the work done." Id. Furthermore, the special master may reduce fees *sua sponte*, apart from objections raised by respondent and without providing petitioners notice and opportunity to respond. See Sabella v. Sec'y of HHS, 86 Fed. Cl. 201, 208–09 (Fed. Cl. 2009). A special master need not engage in a line-by-line analysis of petitioner's fee application when reducing fees. Broekelschen v. Sec'y of HHS, 102 Fed. Cl. 719, 729 (Fed. Cl. 2011).

### 1.   Hourly Rates

In 2006, the parties' counsel in this case reached an agreement on the hourly rates for CHCC attorneys, paralegals, and law clerks based upon prevailing rates in the Boston area. See Carr v. Sec'y of HHS, No. 00-778V, 2006 WL10730321, at 1*-4* (Fed. Cl. Spec. Msr. Mar. 29, 2006). The Carr agreement was entered into two years before the seminal Avera case, which established that a court should use the forum rate, i.e., the District of Columbia rate, in determining an award of attorneys' fees. Avera, 515 F.3d at 1348. At the same time, the court adopted the Davis County exception to prevent windfalls to attorneys who work in less expensive legal markets. Id. (citing Davis Cnty. Solid Waste Mgmt. & Energy Recovery Special Serv. Dist. v. U.S. Envtl. Prot. Agency, 169 F.3d 755, 758 (D.C. Cir. 1999)). Recently, CHCC has been requesting rates higher than the rates the parties agreed to in Carr. See, e.g., McCulloch v. Sec'y of HHS, No. 09-293V, 2015 WL 5634323 (Fed. Cl. Spec. Mstr. Sept. 1, 2015). In the instant case, CHCC submitted billings using the Carr rate for all activity prior to April 2, 2014. See Pet'r's Motion Tab A at 14. After that date, CHCC began billing its proposed hourly rates, which are higher than the Carr rates. Id.

The issue of an appropriate hourly rate for the attorneys, paralegals, and law clerks at CHCC was recently ruled upon in McCulloch. The undersigned fully agrees with the McCulloch

analysis regarding appropriate hourly rates for the attorneys, paralegals, and law clerks at CHCC and will use the same hourly rates used in that decision.  For the attorneys involved in the instant case, the hourly rates are as follows:

| | |
|---|---|
| Kevin Conway | $415 |
| Ronald Homer | $400 |
| Christine Ciampolillo | $300 |
| Amy Schwader (née Fashano) | $285 |
| Joseph Pepper | $290 |
| Meredith Daniels | $280 |

For the law clerks and paralegals involved in the instant case, the hourly rates are as follows:

| | |
|---|---|
| Law Clerks | $145 |
| Paralegals | $135 |

Id. at 28.

The undersigned has recalculated the petitioner's requested attorneys' fees using the McCulloch rates as follows:

**Amy Schwader (née Fashano)**

| | | |
|---|---|---|
| Hours billed at the rate of $295 | 24 | Adjusted rate of $285: $6,840.00 |
| Hours billed at the rate of $223 | 7.9 | $1,761.70 |
| Hours billed at the rate of $218 | 0.2 | $43.60 |
| Hours billed at the rate of $211 | 2.0 | $422.00 |
| **Total** | **34.1** | **$9,067.30** |

**Christine Ciampolillo**

| | | |
|---|---|---|
| Hours billed at the rate of $310 | 0.3 | Adjusted rate of $300: $90.00 |
| Hours billed at the rate of $213 | 0.1 | $21.30 |
| **Total** | **0.4** | **$111.30** |

**Joseph Pepper**

| | | |
|---|---|---|
| Hours billed at the rate of $295 | 1.0 | Adjusted rate of $290: $290.00 |
| **Total** | **1.0** | **$290.00** |

**Kevin Conway**

| | | |
|---|---|---|
| Hours billed at a rate of $425 | 1.10 | Adjusted rate of $415: $456.50 |
| **Total** | **1.10** | **$456.50** |

**Meredith Daniels**

| | | |
|---|---|---|
| Hours billed at a rate of $285 | 6.10 | Adjusted rate of $280: $1,708.00 |
| **Total** | **6.10** | **$1,708.00** |

**Ronald Homer**

| | | |
|---|---|---|
| Hours billed at a rate of $415 | 2.10 | Adjusted rate of $400: $840.00 |
| Hours billed at a rate of $322 | 0.7 | $225.40 |
| **Total** | **2.80** | **$1,065.40** |

**Law Clerks**

| | | |
|---|---|---|
| Hours billed at a rate of $143 | 14.50 | $2,073.50 |
| **Total** | **14.50** | **$2,073.50** |

**Paralegals**

| | | |
|---|---|---|
| Hours billed at a rate of $135 | 8.60 | $1,161.00 |
| Hours billed at a rate of $112 | 12.10 | $1,355.20 |
| Hours billed at a rate of $110 | 16 | $1,760.00 |
| Hours billed at a rate of $107 | 9.50 | $1,016.50 |
| **Total** | **46.20** | **$5,292.70** |

**Supplemental Fees**

| | | |
|---|---|---|
| Christine Ciampolillo | 1.3 | Adjusted rate of $300: $390.00 |
| Meredith Daniels | 3.4 | Adjusted rate of $280: $952.00 |
| Ronald Homer | .10 | Adjusted rate of $400: $40.00 |
| Paralegal | .20 | Adjusted rate of $135: $27.00 |
| **Total** | **5.0** | **$1,409.00** |

Therefore, using the McCulloch rate, the total amount of attorneys' fees that CHCC has asked for is $21,473.70.

## 2. Unnecessary Time Billed by Additional Attorneys

Respondent objects to multiple attorneys billing time on this case. The invoice of CHCC billing entries in the initial fee application reflects fees charged for work performed by six attorneys (including two partners), along with paralegals and law clerks. Respondent does not object to fees billed by the primary attorneys on the case, Amy Schwader and Meredith Daniels.[2] Specifically, respondent objects to time billed by Mr. Homer (2.8 hours), Mr. Pepper (1 hour), Mr. Conway (1.1 hours), and Ms. Ciampolillo (.4 hours), totaling $1,923.20 at the adjusted McCulloch rate. Opp. at 18. Respondent argues that the firm's consistent practice of using multiple attorneys on every case is unnecessary and results in inefficiencies and duplicated effort. Id. In particular, respondent objects to Mr. Homer's time spent reviewing orders and other filings in the case. Id. at 19. Respondent notes that the majority of Mr. Homer's time was spent taking notice of orders and calendaring, which she argues is redundant because the attorneys substantively litigating the case would also need to be knowledgeable of the docket and deadlines. Id.

Petitioner contends that the time additional attorneys spent on the case was necessary, reasonable, and not duplicative. Petitioner argues that, in order to zealously and effectively represent clients, it is necessary for the attorneys to discuss the "facts, medical theory and legal ramifications of each case in detail." Reply at 51. Petitioner also defends the time additional attorneys spent reviewing and editing pleadings. Id. at 52. Petitioner states, "[i]t would be

---

[2] Ms. Schwader's and Ms. Daniels' billings constitute the majority of attorney billings on the case.

unprofessional and, potentially, negligent for petitioner's counsel to not review filings."   Id. Petitioner describes Mr. Homer's role in the cases at CHCC, explaining that it is necessary for Mr. Homer to review all court orders and set tasks and track deadlines for each attorney, as he is the attorney of record in all CHCC cases.   Id.

The undersigned and other special masters have previously noted the inefficiency that results when multiple attorneys work on one case.   CHCC often employs such a business model, but special masters have also reduced fees for other attorneys and firms.   See Sabella, 86 Fed. Cl. at 214–15 (affirming the special master's reduction of fees for overstaffing where three attorneys from two different firms worked on a case together); Austin, 2013 WL 659574, at *14 (Special Master Vowell deducted $500 for excessive interoffice communication in a case where seven attorneys at CHCC billed for attending conferences and drafting memoranda about the case); Soto v. Sec'y of HHS, No. 09-897V, 2011 WL 2269423, at *6 (Fed. Cl. Spec. Mstr. June 7, 2011) (the undersigned reduced CHCC's fees for intra-office communications and meetings); Carcamo v. Sec'y of HHS, No. 97-483V, 2011 WL 2413345, at *7 (Fed. Cl. Spec. Mstr. May 20, 2011) (the undersigned reduced fees when two attorneys at the Law Offices of Dale K. Galipo billed for the same meetings with a client).

 In this case, CHCC billed for multiple attorneys to review court orders and edit routine pleadings.   The undersigned will address each of these billing categories in turn.

Mr. Homer billed time to review every electronic filing notification and to note each filing in the firm's case file.   Specifically, he billed 0.1 hour, or six minutes, to review every filing.   This pattern is consistent whether the filing was a one-page Notice of Assignment (on September 25, 2013, Fee App. at 8) or a seven-page Rule 4(c) Report (on February 10, 2014, Fee App. at 12). Petitioner defends this time, stating in her reply that during Mr. Homer's review of the orders and filings, he also set tasks for each attorney and tracked deadlines.   Reply at 52.   Petitioner argues that this is reasonable because Mr. Homer is the attorney of record in every CHCC case.   Id.

The undersigned doubts that Mr. Homer actually spent the same time reviewing a one-page order as a seven-page report.   Even if he did, many of Mr. Homer's billings are unnecessary and duplicative.   This is demonstrated by the time he spent on February 11, 2014 to review respondent's Rule 4(c) report, which Ms. Schwader had already reviewed earlier that day.   See Fee App. at 12.   Furthermore, in order to properly prepare for drafting motions, status conferences, and client calls, it is undoubtedly necessary for the attorneys more closely involved in the case to review the orders that Mr. Homer had already looked at.   The undersigned is sympathetic to the fact that Mr. Homer is the attorney of record on the case and he is therefore the person ultimately responsible if a deadline is mistakenly missed.   However, CHCC chose for Mr. Homer to have the role of attorney of record in every case. Other law firms that bring many vaccine cases to the Court, such as Maglio Christopher & Toale, PA, do not have the practice of having the same attorney of record in every case.   Instead, the attorney primarily responsible for working on the matter is the attorney of record in that case, and is therefore ultimately responsible for following the Court's deadlines and orders.   The justification for Mr. Homer's hourly billing rate of $400 is his many years of experience with the Vaccine Program that have shaped his insight and judgment regarding vaccine cases.   Mr. Homer is not using this insight and judgment when reviewing orders simply to track deadlines and assign tasks.   Therefore, the undersigned will reduce the amount billed by Mr.

Homer for reviewing court orders and respondent's filings by the percentage difference, rounded down, between his billing rate and the most experienced attorney that was closely involved in the case, Ms. Schwader (28%), as it would have been reasonable for Ms. Schwader to review these filings. However, the undersigned will not reduce the amount petitioner requested for Mr. Homer's work that was not simple review of orders or duplicative: 30 minutes spent drafting the final pleadings and fee tracking billed on July 14, 2015, at the adjusted <u>McCulloch</u> rate of $400 per hour ($200). **Therefore, the undersigned reduces petitioner's fees by $242.30.[3]**

In addition to the time Ms. Schwader and Ms. Daniels spent drafting and editing pleadings, CHCC billed 1.2 hours ($558.5) for other attorneys (Mr. Conway, Ms. Ciampolillo, and Mr. Pepper) to edit and review pleadings. Roughly 25% of this time was devoted to editing routine, primarily boilerplate pleadings, such as a motion for enlargement of time (<u>Id.</u> at 16), a two-paragraph status report (<u>Id.</u> at 17), or a one-paragraph joint notice not to seek review (<u>Id.</u> at 24). It is unreasonable for the main attorney on a case to draft a routine pleading, and then have another attorney, who is unfamiliar with the case, bill time to review the routine pleading. Surely the attorney on the case is capable of reviewing her own routine pleadings for typographical errors or other mistakes. **The undersigned reduces petitioner's fees by $139.60** (25% of the fees requested for editing pleadings at the <u>McCulloch</u> rate).

### 3. Petitioner's Supplemental Fee Requests

### i. Petitioner's Supplemental Fee Application

In her supplemental fee application, petitioner requests $1,440.50 in attorneys' fees, consisting of five hours billed by attorneys in preparing petitioner's reply. At the <u>McCulloch</u> rate, this amount is reduced to $1,409.00.

In her opposition, respondent preemptively requested that the undersigned reduce the amount awarded for time spent by petitioner on replying to her opposition. Respondent contends that "it is not reasonable for petitioner to seek supplemental fees for defending billing practices that the Special Master has ruled are unreasonable in previously decided cases." Opp. at 21. Respondent also argues that petitioner's reply to respondent's opposition in the CHCC fee decisions currently before many special masters is "nearly identical in every case," and that petitioner should only be reimbursed for "original work" produced in the reply. <u>Id.</u>

As to CHCC's defense of its billing practices, the undersigned is not bound by her prior decisions, prior decisions of other special masters, or even prior decisions of U.S. Court of Federal Claims judges. <u>Hanlon v. Sec'y of HHS</u>, 40 Fed. Cl. 625, 630 (Fed. Cl. 1998). While perhaps not the most efficient use of judicial resources, petitioner is free to raise arguments that have previously and even consistently been rejected. Therefore, the undersigned will not reduce petitioner's supplemental fees for time billed in defending CHCC's fee practices.

The law does require, however, that petitioner's counsel not bill for duplicative tasks. The

---

[3] The amount originally asked for at the adjusted <u>McCulloch</u> rate, minus the <u>McCulloch</u>-adjusted fees requested for Mr. Homer's non-review work, reduced by 28%, plus $200 for Mr. Homer's non-review work.

undersigned has looked at the replies petitioner has filed in other fees cases before the court, and she finds that there is a great deal of original work in petitioner's reply in the instant case. However, CHCC's defense of its attorneys' hourly rate is largely the same in its replies. Petitioner used the same research and sources on Boston local rates for all of its replies. Therefore, the undersigned will reduce petitioner's requested supplemental fees by 25%. Moreover, as discussed earlier in this decision, Mr. Homer's time spent on reviewing respondent's filing will be billed at Ms. Schwader's rate. **Thus, the undersigned reduces petitioner's fees by $349.30**.

### B. Reasonable Attorneys' Costs

Attorneys' costs must be reasonable as well. See Perreira v. Sec'y of HHS, 27 Fed. Cl. 29, 34 (Fed. Cl. 1992) ("The conjunction 'and' conjoins both 'attorneys' fees' and 'other costs' and the word 'reasonable' necessarily modifies both. Not only must any request for reimbursement of attorneys' fees be reasonable, so also must any request for reimbursement of costs.").

### 1. Preparation of a Life Care Plan

In her fee application, petitioner asks to be reimbursed $2,430 for hiring an expert to prepare a life care plan. In her opposition, respondent contends that petitioner should not be reimbursed for this cost. Respondent argues that a life care plan was not needed in this "garden variety" SIRVA case. Opp. at 20. Respondent asked the undersigned to issue an order requiring petitioner to file the life care plan so that she can evaluate its usefulness. In particular, respondent asked the undersigned to assess whether the recommendations in the life care plan were specific to the needs of Ms. Tomlinson, or if they would apply to any SIRVA petitioner. Id. Petitioner filed the life care plan along with her reply, eliminating the need for the undersigned to rule on respondent's request. Petitioner explains in her reply that a life care plan was needed to calculate full damages, including future medical needs, and that the life care plan was specific to Ms. Tomlinson. Reply at 55-56.

The undersigned has reviewed the life care plan, and finds that the cost to prepare the plan was warranted. The life care plan was needed to calculate full damages in the case, as it describes the future needs of petitioner, which is relevant in deciding on the proper amount of damages. For example, the life care planner recommended annual visits to an orthopedist for the rest of petitioner's life. See Life Care Plan at 2. The life care plan was also specific to petitioner's situation. The life care planner contacted petitioner's healthcare providers, evaluated petitioner's future healthcare needs, and calculated the petitioner's yearly healthcare costs. Id. This plan is undoubtedly specific to Ms. Tomlinson, not simply any SIRVA petitioner. **Thus, the undersigned awards $2,430.00, the full amount petitioner asks for, for reimbursement for hiring a life care planner.**

### CONCLUSION

The undersigned finds an award of attorneys' fees and costs appropriate. In sum, the undersigned awards petitioner the following amount for attorneys' fees and costs:

Initial Fee Application:

| | |
|---|---|
| Requested Attorneys' Fees (at the <u>McCulloch</u> Rate): | $20,064.70 |
| Reductions: | $381.90 |
| Attorneys' Fees Awarded: | **$19,682.80** |
| | |
| Requested Attorneys' Costs: | $3,005.00 |
| Reductions: | $0.00 |
| Attorneys' Costs Awarded: | **$3,005.00** |
| | |
| Requested Petitioner's Costs: | $350.00 |
| Reductions: | $0.00 |
| Petitioner's Costs Awarded: | **$350.00** |
| | |
| Attorneys' Fees & Costs Awarded: | **$22,687.80** |
| Petitioner's Costs Awarded: | **$350.00** |

Supplemental Fee Application:

| | |
|---|---|
| Requested Attorneys' Fees (at the <u>McCulloch</u> Rate): | $1,409.00 |
| Reductions: | $349.30 |
| Attorneys' Fees Awarded: | **$1,059.70** |

| | |
|---|---|
| <u>Total Requested Fees & Costs</u>: | $24,828.70 |
| <u>Total Fees & Costs Awarded:</u> | **$24,097.50** |

**Accordingly, the court awards:**

a.  **$23,747.50**, representing attorneys' fees and costs.  The award shall be in the form of a check made payable jointly to petitioner and Conway, Homer & Chin-Caplan in the amount of **$23,747.50**; and

b.  **$350.00**, representing petitioner's costs.  The award shall be in the form of a check made payable to petitioner for **$350.00.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court is directed to enter judgment herewith.[4]

**IT IS SO ORDERED.**

Dated: <u>October 23, 2015</u>                                  /s/ Laura D. Millman
                                                                        Laura D. Millman
                                                                        Special Master

---

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by each party, either separately or jointly, filing a notice renouncing the right to seek review.